## Jermyn's Election Expenses.

*Election law—Primary elections—Expenses—Account—Petition for audit—Construction of statute—Act of March 5, 1906, P. L. 78.*

1. Under the Act of March 5, 1906, P. L. 78, which provides that "within twenty days after the last day for the filing of any account required by this act, any five electors of the state . . . . may present a petition in a court of quarter sessions of the county in which the office where such account has been filed, is situated, praying for an audit of such account," the filing of a petition for audit with the clerk of the

court of quarter sessions, the court not being in session, is a sufficient presentation of the petition to give the court jurisdiction over it.

2. As the purpose of the Act of March 5, 1906, P. L. 78, was to give a more comprehensive remedy to prevent the corruption of voters, the act is remedial legislation and calls for a liberal construction so as to give effect to the legislative intent.

3. In the construction of statutes an interpretation is never to be adopted that would defeat the purpose of the enactment, if any other reasonable construction can be found which its language fairly bears.

Argued March 4, 1914.   Appeal, No. 25, March T., 1914, by David Strauss et al., from order of Q. S. Lackawanna Co., Oct. T., 1913, No. 623, dismissing petition for audit of election expenses In re 'Primary Election Account of Edmund B. Jermyn, Candidate for Mayor of Scranton.   Before RICE, P. J., HENDERSON, ORLADY, HEAD, PORTER, KEPHART and TREXLER, JJ. Reversed.

Petition for audit of election expenses account.
The opinion of the Superior Court states the case.

*Error assigned* was the order dismissing the petition.

*C. P. O'Malley*, with him *E. T. Philbin, H. S. Alworth* and *J. F. Scragg*, for appellant.—Petition for audit of election expense account was properly presented: Foote v. Silsby, 9 Fed. Cases, 383, Case No. 4917; Porter v. Flick, 60 Neb. 773; Levey v. Bigelow, 6 Ind. App. 677; Michigan Cent. R. R. Co. v. R. R. Co., 3 Ind. 239; Butler v. United States, 87 Fed. Repr. 655; Com. v. Magee, 8 Pa. 240; Ritter v. Wray, 45 Pa. Superior Ct. 440; Turbett Twp. Overseers v. Port Royal Borough Poor Overseers, 33 Pa. Superior Ct. 520; McQuiston's Adoption, 238 Pa. 304; Bechtel's Election Expenses, 39 Pa. Superior Ct. 292; Com. v. R. R. Co., 27 Pa. 339.

The act is directory, not mandatory: McQuiston's Adoption, 238 Pa. 304.

*M. J. Martin,* with him *Joseph O'Brien,* for appellee, cited: Pittsburg v. Kalchthaler, 114 Pa. 547; Johnston v. Hunter, 50 West Va. 52; Ex parte Gardner, 22 Nev. 280; Myers v. Consumers Coal Co., 212 Pa. 193; Mealing v. Pace, 14 Ga. 596; Sunshine's Account, 21 Pa. Dist. Rep. 294.

OPINION BY ORLADY, J., April 20, 1914:

Edmund B. Jermyn was a candidate for the nomination of mayor of the city of Scranton at a primary election held September 16, 1913. On October 1, he filed in the office of the clerk of the court of quarter sessions of Lackawanna county, "by himself individually as a candidate for said office of mayor, and by R. Leo Huber, treasurer of Edmund B. Jermyn, candidate for mayor, a paper purporting to be an accounting of receipts and disbursements received and expended by and for Edmund B. Jermyn, candidate for mayor at the primary election aforesaid."

On September 21, 1913, a petition addressed "To the Honorable the Judges of the Court of Quarter Sessions of Lackawanna county," signed by David Strauss and eight other electors of the political division, concerning which the account was filed, was presented to the president judge of the court of quarter sessions at a time, when as stated in the opinion of the court below, "the court of quarter sessions had adjourned; two of the judges had departed for their homes; the remaining judge was in chambers. There was no order made, but the petition was filed in the office of the clerk of the courts." The learned judge stating that "no order could be made at that time, but told counsel to file it with the clerk of the court." An order was made the following day, to wit: "Now, October 22, 1913, upon consideration of the above petition it is ordered as follows: 1st, That the clerk of said court forthwith certify said account to the court for audit. 2d, That thereupon the 23d day of October instant, at two o'clock

P. M. is fixed as the date for said audit.  3d, That then and there the several petitioners and also the accountant shall appear in said court, whereupon the audit prayed for shall be proceeded with according to law, by the court."  On October 23, the accountants by counsel moved the court to dismiss the petition for the reasons: "Second, The said petition was not filed in accordance with the provisions of the Act of March 5, 1906, P. L. 78.  Third, The said petition in this case was not presented to the Court of Quarter Sessions of the County of Lackawanna in which the account was filed within the time prescribed by the Act of Assembly of March 5, 1906.  Fourth, No order of court was made upon the said petition within the time prescribed by the Act of March 5, 1906."  After due hearing the court dismissed the petition, "For the reason that the petition could not be lawfully considered unless presented to the court, and the order could not be properly entered except during the sessions of the court."

We have stated the material facts, so that the whole subject raised may be fully considered.  The question involved is stated by the appellant to be "Must a petition for audit of election expenses be presented in open court, or is filing in the clerk's office, and presentation to a judge in chambers sufficient?"

The Act of March 5, 1906, P. L. 78, provides: "Within twenty days after the last day for the filing of any account required by this act, any five electors of the state, or of the political division thereof concerning which any such account has been filed, may present a petition to the court of Quarter Sessions of the county in which the office where such account has been filed is situated, praying for an audit of such account.  The court shall thereupon direct the officer or officers with whom such account has been filed to certify the same to the court for audit, and may, in its discretion, require security to be entered for costs, etc."

The record does not disclose the hour for opening or

adjourning of the sessions of the court for each day; or the hour when, or the cause of the court's adjournment for that day, or the hour at which the petition was presented.

By the Act of August 7, 1883, P. L. (1885) 323, as enlarged by the Act of June 15, 1887, P. L. 404, the court of quarter sessions of Lackawanna county has three judges learned in the law, and by the Act of March 18, 1875, P. L. 25, each one of these three judges was duly qualified and authorized to act as a judge of the court of quarter sessions for that county, and to hold a separate court of quarter sessions for the trial, hearing and disposition of causes . . . . and to make all orders which may be judged necessary and convenient. In measuring the intention of the legislature in using the words, "may present a petition to the court of Quarter Sessions" we are guided by well-established rules of construction. The act was passed, as said in Bechtel's Election Expenses, 39 Pa. Superior Ct. 292, as "the legislative response to a vigorous demand by the people that a remedy be found to stop the corruption fast becoming an incident of our popular elections which, if unchecked would soon destroy the free and honest expression of the will of the people." It is entitled, "An act to regulate nomination and election expenses, and to require accounts of nomination and election expenses to be filed," and providing penalties, etc. Keeping in view that the paramount object and purpose of this act was to have accounts of the candidates filed in court, and be then subjected to an audit, it is clearly of the class of legislation called remedial; in giving a more comprehensive remedy to prevent the corruption of voters, by the unlawful use of money, etc., and it calls for a liberal construction so as to give effect to the legislative intent.

In Big Black Imp. Co. v. Com., 94 Pa. 450, the Supreme Court fixes the rule as follows: "Statutes are to be construed so as may best effectuate the intention

of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and when discovered, it ought to be followed with judgment and discretion in the construction; though that construction may seem contrary to the letter of the statute." See also Turbett v. Port Royal Boro. Poor Overseers, 33 Pa. Superior Ct. 520. We have an old rule of construction, stated in Philadelphia v. Railway Co., 102 Pa. 190, as follows: "If one interpretation would lead to an absurdity, the other not, we must adopt the latter; so that interpretation which leads to the more complete effect, which the legislature had in view is preferable to another: Sedg. Cons. Stat. 196; Nichols v. Halliday, 27 Wis. 406." Following these authorities we said in Ritter v. Wray, 45 Pa. Superior Ct. 440, "Language is rarely so free from ambiguity as to be incapable of being used in more than one sense; and to adhere rigidly to its literal and primary meaning in all cases would be to miss the real meaning in many. If the literal meaning had been given to the laws which forbade a layman to lay hands on a priest, and punished all who drew blood in the streets, the layman who wounded a priest with a weapon would not have fallen within the prohibition, and the surgeon who bled a person in the street to save his life would have been liable to punishment: Endlich on Interpretation of Statutes, sec. 25." It is a settled rule that in the construction of statutes, an interpretation is never to be adopted that would defeat the purpose of the enactment, if any other reasonable construction can be found, which its language fairly bears: McQuiston's Adoption, 238 Pa. 304.

In Foster's Petition, 243 Pa. 92, after citing as follows: "Where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning: 36 Cyc. 1107. It is fundamental that if, giving to the words of an act their literal or natural meaning, the conclusion reached would be unreasonable

or absurd, some other meaning within the reasonable scope of the words may be adopted to avoid that result, if it appears that such other meaning may probably have been the one intended: Rossmiller v. State (Wis.), 91 Am. St. Rep. 910, 913." MESTREZAT, J., announces the same proposition and concludes, "It is a well-settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences or is incapable of execution."

The fundamental and governing question is, what is the legislative intent, and this intent is to be ascertained first of all from the statute itself, and as applied to the subject-matter to which it relates, "whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result from construing it one way or the other:" 36 Cyc. 1157: McQuiston's Adoption, 238 Pa. 304. "It is the duty of the court to make such a construction of a statute as shall suppress the mischief, and advance the remedy, and the widest operation is therefore to be given to the enactment so long as it does not go beyond its real object and scope. . . . The meaning is found not so much in a strictly grammatical or etymological propriety of language, nor even in the popular sense, as in the subject, or in the occasion on which they are used, and the object to be attained, . . . . this is all that liberal construction consists in—that the statute to be construed, giving the words the largest, the fullest and most extensive meaning of which they are susceptible: Endlich on Statutes, secs. 73, 103, 107. The language of a statute, as of every other writing, is to be construed in the sense which it bore at the period when it was passed: Com. v. Railroad, 27 Pa. 339; Endlich on Statutes, 85. We are not unmindful of the rule which declares that "when a statute fixes the time within which an act must be done, the courts have

no power to enlarge it, although it relates to a mere question of practice," as stated in Harris v. Mercur, 202 Pa. 313, but in the case now being considered, every requirement of the statute was literally observed, so far as time, place and ultimate location of the petition were concerned. The only question is, what effect is to be given to the words "present a petition to the court of Quarter Sessions" under the facts and circumstances of this case, and whether the intermediate act of passing the petition through a doubtfully designated channel is so vital to the proceeding that it determines the whole question of jurisdiction. The term "Court" as used in popular speech may and often does refer not only to the open tribunal sessions, where justice is judicially administered, but as well, to the official or officials who constitute it, and also to the place where the tribunal meets: 11 Cyc. 652, notes; Com. v. Magee, 8 Pa. 240. "To present," means to lay before, to deliver up, to give official notice of, to hand over, proffer, so that a subject may be surrendered and taken possession of. The words, quoted from the act, are to be taken in their reasonable and popular sense in the light of the facts then existing, and necessarily known to the legislature.

The account had been among the files of the court since October 1. The duty of the court in receiving the petition for audit was merely clerical. There was not to be any present court examination, investigation, order made or act done. No judicial discretion was to be exercised. The court or judge making the order was not to retain the petition, and had the court then been in open session nothing more would have been done than was done—place the petition on file. The records of the court are necessarily under the control of the judges, so far as may be essential to the administration of justice, though they are in the physical custody of the clerk. The words have regard to the method of procedure, so that there may be regularly

on the records of the court, the petition for the audit of the account that is at that time on file, and in the sense in which they are used in the statute are directory. The petition was in fact presented to the proper person, in his capacity of judge of that court, at the proper place, and filed, by his oral order that day with the clerk of the court. Under the facts, this was a sufficient compliance with the statutory requirement, and this effect was given to the fact of filing, when the court, in open session the following day, "upon consideration" fixed the time and place of audit.

Many conditions, over which neither court or parties could have control, might arise to prevent the presentation of the petition in an open session of the court, the unexpected illness of the judge, an inadvertent adjournment, no regular session of the court being scheduled for that time, the destruction of the building, and others. The provisions of this act should not be thwarted by such a construction, when its vital purpose was not in the least manner affected, as the petition for audit was in the exact place the statute intended it should be, and within the time fixed by the statute.

The Uniform Primaries Act of February 17, 1906, P. L. 36, was passed at the same extraordinary session of the legislature at which the one under discussion was enacted, and provided for two primary election days in each year,—one on the fourth Saturday before the February election, the other on the first Saturday in June, except in presidential years and then, on the second Saturday of April. Under the construction urged by the appellee, a number of the counties of the state would not have open a court of quarter sessions when such a petition could be presented, within the statutory time following the spring primaries, and in such counties the statute would be inoperative. See P. & L. Dig., pp. 734–736, Terms of Court.

Our conclusion is that the words "may present a petition to the court of quarter sessions" were used in the

broad and popular sense, and that the filing of the petition for audit with the clerk of the court, the court not being in session, was a sufficient presentation of the petition to give the court jurisdiction over it.

The order of the court below is reversed, and a procedendo is awarded.