## Reading City, Appellant, *v.* Yeager.

*Building laws — Obstruction of street — Porch — Definition of
porch—City ordinance.*

A structure erected along the front of a city residence, not cover-
ing the doorway, five feet in height balustraded in the front and at
the ends, and extending five feet two inches from the front wall,
is a "porch" within the meaning of a city ordinance passed in 1865
which permitted a "porch, cellar door or step" to extend six feet

into the street, where it appears that prior to the ordinance and afterwards such structures were commonly known in the city and vicinity as "porches," and that many of them were erected after the date of the ordinance without objection by the municipal authorities.   In such a case the court will not apply the technical or architectural definition of a porch as "a covered entrance or open vestibule in connection with a doorway."

Argued Nov. 9, 1915.   Appeal, No. 318, Oct. T., 1915, by plaintiff, from order of C. P. Berks Co., Nov. T., 1914, No. 32, reversing judgment of justice of the peace in case of Reading City v. Delia Yeager.   Before Rice, P. J., Orlady, Head, Porter, Henderson, Kephart and Trexler, JJ.   Affirmed.

Appeal from summary conviction.   Before a justice of the peace.

Endlich, J., found the facts to be as follows:

This is an appeal by defendant from the judgment of an alderman in a summary proceeding under the City Ordinance 7 Oct. 1865, City Dig. p. 367, pl. 17.   The cause was tried as well as argued before both of the judges of this court.   It is proper to state that the decision about to be made reflects the conclusions of both. About the material facts involved there is no controversy.   They are briefly as follows:

1. The Ordinance of 1865 provides,

"If any person......shall hereafter make and set up......any porch, cellar door or step, which shall extend......in any street 60 feet wide beyond the distance of 6 feet into such street......and if any person...... shall hereafter make and set up......any bulk, jut window, or incumbrance whatsoever beyond the distance of 2 feet from the building line, whereby the passage of any street shall be obstructed, every person offending and being legally convicted thereof before the mayor or any alderman......shall......forfeit and pay the sum of $5, and shall forthwith remove, or cause the said nuisance to be removed."

2. The defendant, Delia Yeager, being the owner of house and lot No. 633 Franklin street, a 60 foot street, in the City of Reading, in August, 1914, erected along and attached to the front of her house, a wooden structure or platform, enclosed below, with a wooden balustrade around it, extending from the stone doorstep on the east 14 feet 6 inches to the water spout at the western side of the house, reaching 5 feet 4 inches in height above the sidewalk, and extending from the building line 5 feet 2 inches upon and over the pavement.

3. Adjoining the defendant's property on the west is that of Isaac S. Weaver, who uses it as a dwelling and jewelry store. Conceiving that the presence of defendant's structure injured his property by interfering with the view of his show-window, Weaver complained of it to the city authorities and finally obtained their assent to his institution, in the name of the city, of a proceeding for the removal of the alleged obstruction, he first giving bond to indemnify the city against liability for costs. Thereupon he made complaint before an alderman against defendant charging her with violation of the ordinance of 1865. After hearing, the alderman gave judgment against defendant declaring her liable to a forfeiture of $5 and immediate removal of the "said nuisance complained of." From this judgment an appeal was allowed to and taken by defendant.

4. According to the technical meaning of the term "porch" as used by architects, it is "a covered entrance or open vestibule in connection with a doorway." But common usage and understanding in this community and vicinity apply the term to structures of the kind above described as erected by defendant. There are a great many of them throughout portions of the City of Reading, some of much greater size and more substantial construction, their erection having been started or their number having greatly increased during the past 8 or 10 years. Apparently their erection and maintenance have never been objected to or questioned by other property-

owners or by the municipal authorities as offending against the ordinance of 1865.

The locus in quo is shown by the following cut:

The court entered judgment for defendant. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant.

*Isaac Heister,* with him *Wellington M. Bertolet,* City Solicitor, and *Charles H. Tyson,* for appellant, cited: Com. v. Kembel, 30 Pa. Superior Ct. 199; McNerney v. City of Reading, 150 Pa. 611; Kopf v. Utter, 101 Pa. 27.

*C. H. Ruhl,* for appellee.—The case of Commonwealth v. Hufnal, 185 Pa. 376, sustains our contention.

OPINION BY ORLADY, P. J., March 1, 1916:

The principal contention of counsel on each side relates to the meaning to be given the word "porch" as used in an ordinance of the city which has been in force for a half century. The courts approach the interpretation of a statute or an ordinance with the presumption that words and phrases therein are used in their natural, plain, obvious, familiar and popular sense, and without any forced, subtle or technical construction to limit or extend their meaning: Philadelphia & Erie R. R. Co. v. Catawissa R. R. Co., 53 Pa. 20; Dame's App., 62 Pa. 417; 26 A. & E. Encl. of Law Tit. Statute. All laws must be executed according to the sense and meaning which they imparted at the time of their passage: Commonwealth v. Erie, Etc., Railroad, 27 Pa. 339; Jermyn's Account, 57 Pa. Superior Ct. 109. The meaning to be given to a word is not confined by the strict definitions given by lexicographers—if it clearly appears that another meaning was intended by the lawmakers. The definition found in the dictionaries is entitled to great weight though by no means conclusive. The reasoning of the trial judge, and the authorities cited by him fully warrants his conclusion that the "porch" of the defendant does not fall within the condemnation of the ordinance.

The plaintiff's expert witness, while stating that it could not be considered architecturally a porch, yet the terms, porch, portico, terrace, veranda were in common usage in the city, and were sometimes used interchangeably to describe the same character of construction. The

defendant's expert stated that this erection is known commonly as a porch and that there are a large number of similar constructions in the city.  When this old ordinance was enacted it would not be expected that its framers would use technical or professional terms to define a construction which had been in use as an addition to private residences since our early colonial days. The long acquiescence of the city councils in permitting such constructions, "where they call almost everything a porch," and where, as found by the court, "there are a great many of them throughout various portions of the city, some of much greater size and more substantial character is not without significance, to indicate the meaning given to the word in the common speech of the people of that city, since "their erection and maintenance has never been objected to or questioned by other property owners, or by the municipal authorities as offending against the ordinance."  Even as shown in appellant's argument, in its technical use by architects, it is a word of flexible interpretation, and we adopt the one given by the court below.

The judgment is affirmed.