# McQuiston's Adoption.

*Adoption—Jurisdiction—Residence of petitioner—Construction of statutes—Directory statute—Legislative intent—Act of May 4, 1855, P. L. 430.*

1. Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the legislature, to be ascertained from the consideration of the entire act, its nature, its objects and the consequences which would result from construing it one way or the other.

2. Ordinarily when the legislative intent is to make an act mandatory, negative words are employed, since this necessarily excludes the idea of choice or direction, and while it does not follow because affirmative words only are used that a provision is directory, nevertheless this is a circumstance to be considered, together with other indications, in arriving at the legislative intent.

3. In construing a statute, an interpretation is never to be

adopted that would defeat the purpose of the enactment if any other reasonable construction can be found which its language will fairly bear; and if, therefore, it appears that construing the language of an act as mandatory, the purpose of the act would be so seriously impaired as to amount to a defeat in purpose, while on the other hand, if construing it as simply directory its efficiency is preserved, the latter construction is to prevail.

4. In a proceeding to set aside a decree of adoption made under the Act of May 4, 1855, P. L. 430, which provides, "that it shall be lawful for any person desirous of adopting any child......to present his or her petition to such court in the county where he or she may reside, declaring such desire" it appeared that the adoption proceeding sought to be annulled had been commenced in the court of the county wherein the child proposed to be adopted resided, by a petitioner whose residence, as appeared by the petition, was in another county. *Held*, that the words of the act making it lawful for the applicant to apply by petition to the court of the county in which he resides, are merely directory, having regard to the method of procedure, and that they do not necessarily deny to him the right to at least present his application to the court of that county in which the child, the subject of the adoption, resides.

Argued October 18, 1912. Appeal, No. 76, Oct. T., 1912, by Hannah A. McQuiston, from decree of C. P. Armstrong Co., June T., 1891, No. 19, dismissing petition to revoke decree of adoption of Harry Ritchey McQuiston. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Petition for the revocation of a decree of adoption. Before PATTON, P. J.

The opinion of the Supreme Court states the case.

*Error assigned* was in refusing to revoke the decree of adoption.

*William J. Breene,* with him *Edmond C. Breene* and *Homer R. Blair,* for appellant.—The record of adoption discloses the lack of jurisdictional essentials required by the Act of 1855, as amended, and that the decree is with-

out jurisdiction and, therefore, void: Torrance v. Torrance, 53 Pa. 505; Bennett v. Hayden, 145 Pa. 586.

*P. M. Speer,* with him *F. A. Sayers,* for appellee.— The provision of the Act of 1855 that the petitioner may present his petition to the court of any county of which he may be a resident is a privilege conferred upon the party applying for adoption of a child and is waived by submitting himself to the jurisdiction of any court having general jurisdiction of the subject matter: Nagle v. Nagle, 3 Grant (Pa.) 155; Putney v. Cathers, 8 Pitts. Leg. J. 171; Brown v. Webber, 60 Mass. 560; Cleveland v. Welsh, 4 Mass. 591.

OPINION BY MR. JUSTICE STEWART, January 6, 1913:
The object of the proceeding in the court below was to have the decree of the Court of Common Pleas of Armstrong County of 4 March, 1891, whereby Harry Ritchey McQuiston, the appellee, was made the adopted son of Cyrus E. McQuiston, revoked. Appellant, the widow of the adopting parent, on 1 July, 1911, presented her petition asking for a revocation of the decree on the ground that not only does it nowhere appear in the decree, or in the proceedings which led up to it, that Cyrus E. McQuiston, who petitioned for the adoption, was at the time of so doing, or ever had been a resident of Armstrong County, but the fact of his residence in Venango County at the time is expressly stated in his petition. The contention made on her behalf is, that in all such cases the petitioner's residence within the county in which the application is made is a fact essential to the jurisdiction of the court of that county, and inasmuch as the jurisdiction to decree adoption is outside the course of the common law and derived wholly from statutory enactment, it can be properly exercised only as the fact of such residence within the particular county is made to appear in the record. The conclusion here stated necessarily follows from the premise from

which it is derived; but the premise involves an assumption of law to which we cannot agree. Neither in the court below nor here upon argument, was its correctness questioned; but it involves a matter of such serious import, not only as it affects the parties to this appeal, but all parties in like position with respect to adoption, if any there are, that it cannot be overlooked whatever the result. If residence in the county be a jurisdictional fact, as here asserted, it follows inevitably that appellee's adoption, though acted upon by the adopting parent and submitted to and trusted in by the one adopted through all the years of his infancy, was a nullity and a delusion, and for promised sonship has been substituted simple servitude, unrequited in the way the parties contemplated, since what the record here discloses as to the residence of Cyrus E. McQuiston is that he was a resident of Venango County, whereas the proceeding was in Armstrong County. The court below in dismissing the petition acted for its authority on Wolf's Appeal, 22 W. N. C. 93, a case affirmed per curiam on the opinion of the judge who heard the case. That case is clearly distinguishable from this on its facts. There it did appear from the record that the petitioner was a "temporary resident" of the county in which the application was made; his petition so stated, and what was there decided, and, as we think, all that was decided, was that assuming residence to be a jurisdictional fact, temporary residence met the requirements of the statute. True, there the lower court advanced other reasons for its action, such as waiver, want of standing of contestants to question the decree, and the estoppel of those the plaintiff represented in the proceeding. It was upon the views expressed with respect to these matters that the lower court in that case largely relied. These reasons were based wholly on equitable considerations which can have little if any weight in considering the question of jurisdiction. If a decree be void for want of jurisdiction, it is as though it had

never been made, and no matter how strong an equity be asserted, it can give no rights under a void decree. So, then, except as the order and decree in this case can be sustained on other grounds than here are urged in its support, it must fall. We come directly to what we consider the fundamental and governing question in the case: is residence of the party applying for the adoption in the county in which the application is made an essential fact upon which jurisdiction of the court depends? Whenever such question arises it is the legislative intent that determines, and this intent is to be ascertained first of all from the statute itself, and as applied to the subject matter to which it relates. "Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other": 36 Cyc. 1157. We quote so much of the language of the act relating to the adoption of children as falls within the present inquiry: "Sec. A, that it shall be lawful for any person desirous of adopting any child as his or her heir, or as one of his or her heirs, to present his or her petition to such court in the county where he or she may be resident, declaring such desire," etc. Having regard to the language here used, and the manifest purpose of the act, can we derive from these an intent on the part of the legislature that the words are to be understood as mandatory or simply directory? If the former, then unquestionably, as we have said, a proceeding of this nature instituted in the county in which the petitioner is not a resident at the time, would be coram non judice, and any decree entered therein would be a nullity; if the latter, while the proceeding might be irregular, the decree entered therein would at most be simply voidable. If the decree of adoption in the present case is merely voidable because of irregularity, the court below was entirely right in dismissing the peti-

tion; otherwise the petition should have been allowed. It is to be remarked first of all that the words of the act are affirmative, "that it shall be lawful," etc., whereas ordinarily when the intent is to make the act mandatory, negative words are employed, since these necessarily exclude the idea of choice or discretion. It does not follow because affirmative words only are here used, that therefore the provision is directory. Many acts have been construed mandatory where only affirmative words have been employed; but where affirmative words are used it is nevertheless a circumstance to be considered. If negative words had been here employed the intent to compel an observance would have been unmistakable. The fact that they are not employed not only leaves the question an open one, but if other indications are found pointing to an intention merely directory, such circumstance gives additional significance to the face. "Where the words are affirmative," said SHARSWOOD, J., in Bladen v. Philadelphia, 60 Pa. 464, "and relate to the manner in which power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may and often have been construed to be directory; but negative words which go to the power or jurisdiction itself have never, that I am aware of, been brought within that category." We are of opinion that the words which give rise to the question here relate solely to the manner in which the jurisdiction is to be exercised. It is a settled rule that in the construction of statutes an interpretation is never to be adopted that would defeat the purpose of the enactment, if any other reasonable construction can be found which its language will fairly bear. If, therefore, it appears that by construing the language of the act in the particular referred to as mandatory, the purpose of the act would be so seriously impaired as to amount to a defeat in purpose; while, on the other hand, if construing it as simply directory its efficiency is preserved, the latter con-

struction is to prevail. The general purpose of the act in question is unmistakable; it is the expression of the humane and benevolent sentiments of the legislature that passed it towards a dependent class of our population, many members of which, by reason of conditions for which they are not responsible, and which, because of infancy they have no power to overcome, are, if not entirely helpless in the struggle of life, so far prejudiced and handicapped by their environment that fair opportunity to develop into virtuous men and women is denied them. It therefore calls for a liberal construction to the end that it may fairly accomplish the purpose of its enactment. While the act permits the adoption of children of whom such misfortune may not be affirmed, by and with the consent of the parent, yet in every case its solicitude is for the welfare of the child, and never for the convenience of the party adopting. Nothing could be more foreign to the purpose of the act than subjection of the child to servitude upon the application of one desiring its service. The party applying for adoption must show himself capable of providing and caring for the child in a way advantageous to the child, and the child is given him, not as bound in servitude, but under filial relation. The power in all cases is given to the courts, not to any one special tribunal, but to all the courts of the State in like degree. Now, we are met with the provision in the act that it shall be lawful for any person desirous of adopting any child to present his or her petition to such court in the county where he or she may be resident, declaring such intention, etc. Allow this to be a mandatory requirement in the sense that the application can be made to no other court than that in the county in which the applicant resides, and we have this result; the children of a particular county, no matter how strongly their unfortunate condition appeals, can be allowed the benefit of the act only as some one can be found residing in the same county to make application for their adoption. If one must resort under any

circumstances with his application to the court of the county in which he resides, he is necessarily limited in his choice to the children of that particular county, for the jurisdiction of that court is confined to children residing therein. The Court of Venango County where Cyrus E. McQuiston resided could not have conferred the right of adoption in the present case, because the child to be affected by the adoption was domiciled in Armstrong County, and was the ward of the court of that county. The act in question nowhere enlarges the territorial jurisdiction of the court hearing the application. If such restriction as that indicated were intended, what could have been the purpose to be accomplished thereby? It is manifest that under such construction the act would be so restricted in its operation that many worthy objects within the legislative solicitude would be denied its beneficence, and that for no apparent reason whatever. If it be suggested as a possible purpose for restricting the jurisdiction to the court of the applicant's residence, that such court could better acquaint itself with the condition, character and circumstances of the applicant, and therefore better judge of whether the child would be benefited by the adoption, a sufficient answer is that as this court has construed the act in Wolf's Appeal, supra, even a temporary residence in the county,—a term not susceptible of exact definition as to limit of time, and which has been held to include cases where one is in another county or state than that which is his permanent residence and is there engaged in a matter of business for a longer or shorter period,—would be a sufficient compliance with the act. The act then is to be construed just as though it read "in the county where he or she may be resident permanently or temporarily." What opportunity would temporary residence of such indeterminate character give a court of advising itself of those things it should know with respect to the applicant before allowing the adoption? In view of the construction this

court has given the act, such purpose may not be ascribed to the legislature. The impairment of the efficiency of the act by giving it the restrictive meaning which necessarily results, if the expression we have considered is allowed to be mandatory, is to our mind a circumstance which compels a different construction, especially since there are no negative words in the provision, no express denial of the right of the applicant to petition any court in the Commonwealth. The court of Armstrong County which entered the decree in the present case had jurisdiction of the child the subject of the adoption, and the applicant, whether there in person or not, was constructively present through his petition submitting himself and his cause to the jurisdiction of the court. It is no strained construction to allow such appearance to be the full equivalent for all practical purposes to a temporary residence which continued only so long as was necessary for an appearance. But we have no desire to circumvent the plain language of the act. We rest our conclusion upon something more than mere refinement, and hold that the words of the act making it lawful for the applicant to apply by petition to the court of the county in which he resides, are merely directory, having regard to the method of procedure, and that they do not necessarily deny to him the right to at least present his application to the court of that county in which the child, the subject of the adoption, resides.

For the reasons stated we overrule the assignments of error and affirm the order and decree of the court; the costs of the proceeding to be paid by the appellee.