## Johnson v. Board of School Directors of McGuffey School District

*Michael E. Kusturiss,* for plaintiff.
*William D. Phillips,* for defendant.

SWEET, P. J., June 30, 1972.—At least since the days of cavalier and roundhead, man has intermittently worn his hair in such a way as to express his political or social attitudes. Our grandparents identified the boyish bob of the 20's with promiscuity. Today's hard-liners equate long hair with pot, or worse. So as men line up on either side of the dividers, which may someday become the barricades, it is not unnatural that long hair, or the inferences from it, should be a focal point of attention.

Such being the case, it takes one further step in the thought process only for a person to use his long hair to cover his professional inadequacy; that's what happened here. A teacher named William Alfred Johnson in his first year out of college was unable to perform his stated duties adequately. He was twice rated as unsatisfactory. He left his classroom during a disturbance, and now he says that the administration and the school board are prejudiced against him because of his beard, etc. Plaintiff's narrative statement of facts leads off with claims about the beard.[1]

---

[1] On the first day of school, plaintiff was called to the office of Mr. Zito, the Principal at McGuffey High School, at which time, the Superintendent of Schools, Mr. Long, was present, and he, at this time, informed plaintiff unless a well trimmed beard, which he had, was removed that it was not only possible but unlikely that the school board would renew plaintiff's contract for the following year. Mr. Long at that time, stated that McGuffey was a conservative school district. Mr. Long and Mr. Zito were prejudiced against the plaintiff from the first day of school. Plaintiff, of course, refused to remove the beard, which he had when he was hired.

The school district refused to renew his contract for the next year, and Johnson brought mandamus. He asked the court to rescind its action and to reinstate him; to direct the school district to tender him a professional employe contract and pay him back salary. A hearing was held before our colleague, the Hon. T. D. Gladden, who returned a verdict in favor of defendant school district. Johnson came to argument court for a new trial. In addition to the boiler plate reasons, which we have considered and find ill-founded here, he says three things: (1) Johnson should have been given a public hearing before the school board; (2) Johnson's dismissal was an arbitrary and capricious act; (3) Johnson was dismissed without having been first properly rated. The trouble with these claims is that they have no underpinning in fact or law.

Much of plaintiff's brief is devoted to the proposition that his rating was not on the exact specified form. Something like this came up in Mullen v. Dubois Area School District, 436 Pa. 211 (1969). A footnote on page 213 says: "The first four ratings were completed on inappropriate forms, but that fact is of no relevance." So much for cavil about the card form.

The question of whether a hearing is required for a temporary professional employe's dismissal was litigated in Nicolella v. Trinity Area School District School Board, 444 Pa. 544 (1971), a case familiar here because tried and written up by our former colleague, the Hon. Barron P. McCune. The Supreme Court in Nicollela, supra, said: "The Board's fairness is exemplified by its granting appellant a hearing even though not required to do so under the School Code."

Whether the firing was arbitrary and capricious is a question of judgment under the evidence, and our colleague, Judge Gladden, who saw and heard the witnesses and counsel did not think so.

A careful reading of the Thall Appeal, 410 Pa. 222 (1963), although it was under procedurally different circumstances from this one, leads us to believe that the standards for temporary professional employes and for professional employes are quite different. It is obvious that the purpose of the rating system is not for the protection of the teachers' rights but of the students' welfare.

The distinguished Judge Woodside, speaking for a unanimous court in Johnson v. United School District Joint School Board, 201 Pa. Superior Ct. 375 (1963), has said this:

" 'The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth' . . . It was the intention of the legislature to subordinate all other considerations to this policy . . . The teacher tenure provisions must be considered in the light of this fundamental public policy."[2]

Judge Woodside said this in deciding that a temporary professional employe could be dismissed for refusal to attend an open house night.

Section 1108 of the Public School Code of March 10, 1949, P. L. 30, as amended, 24 PS §11-1108, provides that:

"No temporary professional employe shall be dismissed unless rated unsatisfactory, and notification, in writing, of such unsatisfactory rating shall have been furnished the employee within ten (10) days following the date of such rating. The rating of a temporary professional employe shall be done as provided in section one thousand one hundred twenty-three of this act."

Judge Woodside said in Johnson v. United School District Joint School Board, supra:

---

[2] Citations deleted.

"It appears to us that a temporary professional employe may be dismissed either by an unsatisfactory rating referred to in §§1108 and 1123, supra, or by the board for reasons set forth in §1122. If a professional employe can be discharged under §1122 and a temporary professional employe cannot be discharged under that section, the teacher who has not acquired tenure by two years service has greater rights than one who has acquired that tenure status. This could not have been the intent of the legislature. We believe that a temporary professional employe may be dismissed by an unsatisfactory rating under §§1108 and 1123 and by the board for reasons set forth in §1122."

It follows from this that the unsatisfactory rating is enough to terminate the teacher. He is not entitled to a trial on his competence.

This would seem to put the burden squarely on plaintiff to convince the hearing judge that the rating was arbitrary and capricious. This burden he was unable to sustain. Judge Gladden was not guilty of abuse of discretion in reaching a verdict for defendant.

We might remark in passing that the intense technicality of plaintiff's brief and argument about the rating cards, the number of days' notice, etc., comes pretty sour from the mouth of an employe who was obviously unable to perform his duties. We will not give these merely directory[3] rules the impact of a stat-

---

[3] Prichard v. Willistown Township School District, 394 Pa. 489 (1959), "It is the legislative intent—ascertained from an examination of the statute as a whole, its nature and object, and the consequences which would result from one or the other construction—which determines whether the statute is directory or mandatory: McQuiston's Adoption, 238 Pa. 304, 86 A. 205; Pleasant Hills Borough v. Carroll, 182 Pa. Superior Ct. 102, 125 A. 2d 466; Baldwin Appeal, 153 Pa. Superior Ct. 358, 33 A. 2d 773. In McQuiston's Adoption, supra, p. 309, we stated: 'If . . . it appears that by construing the language of the act . . . as mandatory, the purpose of

ute of limitations. If the fundamental public policy is to promote quality education, we will not strain the words of law to impose on the McGuffey School District an inadequate teacher.

This brings us back to the long hair. Did they fire him either because he looked like a hippy or because in Earth Science he had a child read a book

the act, would be so seriously impaired as to amount to a defeat in purpose; while on the other hand, if construing it as simply directory its efficiency is preserved, the latter construction is to prevail.' See also: Commonwealth ex rel. Duff, etc. v. Eichmann et al., 353 Pa. 301, 304, 45 A. 2d 38; County Commissioner Substitute Nomination Case, 383 Pa. 372, 377, 118 A. 2d 750. 'When a statute directs certain proceedings to be done in a certain way, or at a certain time, the law will be regarded as directory and the proceedings under it will be held valid, though the command of the statute as to form and time has not been strictly obeyed; the time and manner not being the essence of the thing required to be done: (citing cases), Deibert v. Rhodes, 291 Pa. 550, 554, 140 A. 515; Commonwealth ex rel. Duff v. Eichmann, supra, p. 304."

Mullen v. DuBois Area School District, 436 Pa. 211 (1969), (dissenting opinion) "Whether a particular statutory provision is mandatory or directory is determined by the intent of the legislature as ascertained by a consideration of the statute as a whole. See e. g. Prichard v. Willistown Twp. School District, 394 Pa. 489, 147 A. 2d 380 (1959). The essential difference between mandatory and directory provisions is the effect given to acts performed in violation of the standard set forth: 'A mandatory provision is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding.' Deibert v. Rhodes, 291 Pa. 550, 554-55, 140 Atl. 515 (1928); Pleasant Hills Borough v. Carroll, 182 Pa. Superior Ct. 102, 125 A. 2d 466 (1956); and Kowell Motor Vehicle Registration Case, 209 Pa. Superior Ct. 386, 228 A. 2d 50 (1967)."

Probably all of this above is appellate exegesis on Lord Mansfield's great distinction: "[It] depends on whether the thing directed to be done is of the essence of the thing required"; Rex v. Locksdale, 1 Burr 447. Obviously this whole business of rating cards is directory only.

about the "Chicago Seven"? The school district said they hired him with the beard and the long hair. They denied that the book report or the B+ grade for Miss Long entered the matter.

He probably has a right to wear his beard and hair any way he wants to while teaching school, although I suppose if the hair and beard were filthy, or his appearance so grotesque that he was unable to peer about him and see the children, or so comical as to induce undue risibility, the board could have told him to cut it off. In any event, they did not, and for this forbearance, we should probably commend them. However, no one can use his own singular appearance as an excuse for his own shortcomings. This court would not hesitate to defend a teacher who encouraged his students in the thoughtful reading of important books on great issue of our times, but academic freedom should be taken in a subject context. If a professor of political science urges Problems of Democracy students to read the works of Marx, it is one thing, and for a math teacher to have them read "Captain Billy's Whizbang" magazine is another.

Suffice it to say here Johnson has raised no valid question of personal liberties or academic freedom. He has tried to stir up a cloud of dust in these things, but Judge Gladden peered through the cloud and rendered a fair verdict for defendant. It was a verdict we cannot conscientiously negate.