In re ADOPTION OF R.B.F.
and R.C.F.

Appeal of B.A.F. and C.H.F. Attorney
General of Commonwealth of PA,
Appellants.

Superior Court of Pennsylvania.

Argued June 19, 2000.

Filed Nov. 8, 2000.

Christine Biancheria, Pittsburgh, and Sandra G.E. Gray, Lancaster, for appellants.

Seth F. Keimel, amicus curiae.

Before CAVANAUGH, KELLY, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, EAKIN, STEVENS and TODD, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the October 22, 1998 order entered in the Court of Common Pleas of Lancaster County dismissing Appellants B.A.F.'s and C.H.F.'s petition for adoption of R.B.F. and R.C.F. (hereinafter, referred to as the children). We find that Appellants have not met the requirements of the Adoption Act, as promulgated by the Pennsylvania legislature, and, therefore, we affirm.

¶ 2 The relevant facts and procedural history are as follows: Appellants, a lesbian couple, have been domestic partners since 1983. When the couple decided to raise a family and share responsibilities of parenting, C.H.F. conceived through sperm with an anonymous donor.[1] Before the children, twin boys, were born on March 11, 1997, B.A.F. legally changed her last name to that of Appellant C.H.F. On April 24, 1998, Appellants filed a petition pursuant to the Adoption Act, 23 Pa.C.S.A. § 2101–2910, wherein B.A.F. sought to adopt the children. The trial court issued an order on October 22, 1998, dismissing the petition with prejudice, and a timely appeal to this Court followed.[2] On January 7, 2000, a panel of this Court affirmed the trial court's order; however, on January 21, 2000, Appellants filed an application for reargument/reconsideration, which was granted, and the appeal proceeded for oral argument before an *en banc* panel of this Court.

¶ 3 Appellants present the following issues for our review:

I. Whether the Pennsylvania Adoption Act permits twin boys, jointly raised since birth by both their legally recognized biological mother and their de facto mother, to establish a legally recognized relationship through adoption with their second de facto mother, without destroying the boys' existing legal bonds with their biological mother.

II. Whether the trial court erroneously concluded that the biological mother was required to submit a consent to relinquish parental rights under Subsection 2711(d) in this case.

III. Whether the trial court erroneously relied on the decisions in *E.M.A.* and *K.M.W.*

IV. Whether the trial court's ruling is inconsistent with Pennsylvania law that

---

1. The children at issue were conceived through *in vitro* fertilization. The sperm donor's parental rights are not addressed herein, as his rights are sheltered by Artificial Insemination Donor procedures provided through legislation. Specifically, through legislation, the sperm donor's identity is protected and he has disclaimed all parental rights to children conceived through the use of his sperm.

2. Pursuant to Lancaster County Orphans' Court Rule 7.1 **Exceptions,** and Rule 15.5, **Adoption,** the trial court's decree is final and definitive, and, therefore, Appellant was not required to file exceptions. Accordingly, we will proceed to the merits of this appeal. *See* Pa.R.Orphans' Ct. § 7.1 **Exceptions.**

children's best interests should not be thwarted merely because the family in which they are raised is non-traditional.

V. Whether the Adoption Act must be construed consistently with the federal and state constitutional guarantees of equal protection of the law so that these children are not denied the benefits of adoption by their second parent solely because of their parents' marital status.

VI. Whether the trial court erred in failing to recognize that a joint petition for adoption establishes joint parental rights.

VII. Whether, in holding that the Pennsylvania Adoption Act permits second-parent adoptions, this Court would join a significant body of law of our sister states, which have held such adoptions permissible under Acts similar to our own.

¶ 4 In determining whether Appellant B.A.F. is permitted to adopt the children while Appellant C.H.F. retains her parental rights, this Court does not make a policy decision that Appellant B.A.F. is ineligible to adopt because of Appellants' sexual orientation nor does this Court base its decision on Appellants' sexual orientation.

■ ¶ 5 To the contrary, the matter is simply one of statutory application and interpretation of the Adoption Act. After a careful review, we conclude that the Adoption Act's clear and unambiguous provisions do not permit a non-spouse to adopt a child where the natural parents have not relinquished their respective parental rights, and, therefore, the Act does not afford B.A.F. a legally ascertainable interest, notwithstanding the equal protection clause.[3]

■ ¶ 6 "To effect an adoption, the provisions of the Adoption Act must be strictly construed." *In re Adoption of K.M.W.*, 718 A.2d 332, 333 (Pa.Super.1998) (citation omitted). "Additionally, adoption is purely a statutory right, unknown at common law." *Id.* "Our courts cannot and should not create judicial exceptions where the legislature has not seen fit to create such exception." *Id.*[4]

■ ¶ 7 Herein, Appellants argue that a *de facto* parent may adopt the children of his or her domestic partner because the Adoption Act allows "any individual" to become an adopting parent.[5] *See* 23 Pa. C.S.A. § 2312. However, we cannot limit our inquiry to the language found in Section 2312, for there is a presumption that in drafting the Act, the General Assembly intended the entire statute to be effective. 1 Pa.C.S.A. § 1922. As such, Section 2312 must be read in connection with the other sections of the Act. *Id.*

¶ 8 For example, Section 2701 of the Adoption Act, *supra*, provides that a petition for adoption shall set forth "that all consents required by section 2711 (relating to consents necessary to adoption) are attached as exhibits or the basis upon which consents are not required." Section 2711 requires consent from "the parents or surviving parent of an adoptee who has not reached the age of eighteen years." In particular, the consenting parent must provide the statement: "I understand that by signing the consent I indicate my intent to permanently give up all rights to this child." 23 Pa.C.S.A. § 2711(d).

¶ 9 In the case *sub judice*, the children's natural mother, Appellant C.H.F., attached a consent form to the adoption petition;

---

3. Since there is currently no specific legislation before us which implicates the issue of equal protection, we decline to address the issue further.

4. We note that Appellants argue that the trial court erred in relying on *In re Adoption of E.M.A.*, 487 Pa. 152, 409 A.2d 10 (1979), and *In re Adoption of K.M.W.*, 718 A.2d 332

(Pa.Super.1998), since they are limited to stepparent cases only. We disagree and conclude that the trial court appropriately used such cases in its analysis.

5. Appellants' logic would lead to the possibility that a child could have numerous sets of parents if "any" individual could become an adopting parent.

however, the phrase indicating that she intended to permanently give up her rights to the children was omitted from the form. It is clear that the omission of the language was intentional since Appellant C.H.F. has admitted that she never intended to relinquish her parental rights. *See* Adoption Petition filed 4/24/98; Appellants' Brief at 8, 10–11. As such, Appellants have not met the requirements of Section 2711, *supra.*

■ ¶ 10 The only exception to the unqualified consent requirement is found in Section 2903 of the Adoption Act, which provides that "[w]henever a parent consents to the adoption of his child *by his spouse,* the parent-child relationship between him and his child shall remain whether ... he is one of the petitioners in the adoption proceeding." (emphasis added). Essentially, Section 2903 permits a parent to consent to the adoption of his or her child by the parent's spouse and continue to retain his or her parental rights. This narrow exception applies to "stepparent" situations and has not been expanded to include persons not involved in a legally recognized marital relationship.[6] *See In re Adoption of E.M.A., supra* (holding that natural father's unmarried female partner could not adopt father's children); *In re Adoption of K.M.W., supra* (holding that maternal grandmother could not adopt child while mother retained her parental rights; Adoption Act does not permit nonspouse to adopt a child where both parents have not relinquished their parental rights).

■ ¶ 11 It is for the legislature to decide whether to expand the Adoption Act to cover same-sex partners. Limitations on the courts' power to promulgate policy decisions is consistent with the constitutional doctrine of the separation of powers, a doctrine which has been at the heart of our governmental system since the 1776 Plan or Form of Government for the Commonwealth of the State of Pennsylvania.

*See Pap's A.M. v. City of Erie,* 553 Pa. 348, 719 A.2d 273 (1998), *reversed on other grounds,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). "By this doctrine, the legislative branch, and not the judicial branch, is given the power to promulgate legislation. To aggregate to ourselves the power to write legislation would upset the delicate balance in our tripartite system of government." *City of Erie,* 553 Pa. at 363, 719 A.2d at 281 (citations omitted).

¶ 12 Appellants' attempt at establishing a *de facto* family, which would qualify for adoption under Section 2903, is unavailing. It is the "strong and longstanding public policy of this Commonwealth that marriage shall be between one man and one woman ... [and] a marriage between persons of the same sex which was entered into in another state or foreign jurisdiction, even if valid where entered into, shall be void in this Commonwealth." 23 Pa. C.S.A. § 1704. *See* 23 Pa.C.S.A. § 1102 (defining "marriage" as a "civil contract by which one man and one woman take each other for husband and wife").

¶ 13 The Pennsylvania legislature has specifically decided that homosexual domestic partners may not legally marry in Pennsylvania; therefore, Appellant B.A.F. cannot qualify as a "spouse" under Section 2903, so as to permit Appellant C.H.F. to consent to the adoption of the children by Appellant B.A.F. while retaining her own parental rights. Just as the legislature has made such a determination regarding same-sex marriages, it is for the legislature, not the courts, to determine whether same-sex adoptions are permissible.

¶ 14 We conclude that this Court cannot liken same-sex partners to stepparents, thereby holding same-sex partners exempt from the provision terminating the natural parents' rights, because Pennsylvania law does not recognize such unions. Simply put, since Appellant B.A.F. is not Appellant C.H.F.'s legal spouse, Appellant

---

6. Clearly, Appellants cannot be the "spouse" of one another since the Pennsylvania legislature has outlawed same-sex marriages. 23 Pa.C.S.A. § 1704.

B.A.F. cannot adopt the children without Appellant C.H.F. relinquishing her parental rights. It is the legislature who has the power to promulgate legislation regarding adoption. *See City of Erie, supra.* This Court does not create adoption rights, but determines whether such rights exist in a particular case.

¶ 15 Notwithstanding the principles enunciated *supra,* Appellants, relying on Section 2901 of the Adoption Act, argue that this Court has discretion under Section 2901 to grant an adoption by a domestic partner without terminating the existing parents' rights if there exists "cause shown." Specifically, Appellants contend that the adoption is in the children's best interests, and, therefore, "cause has been shown" under Section 2901.[7]

¶ 16 23 Pa.C.S.A. § 2901 provides that: Unless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated, the investigation required by section 2535 (relating to investigation) has been completed, the report of the intermediary has been filed pursuant to section 2533 (relating to report of intermediary) and all other legal requirements have been met. If all legal requirements have been met, the court may enter a decree of adoption at any time.

¶ 17 We disagree with Appellants' assertion that the "for cause shown" language in Section 2901 is tantamount to a best interest of the child analysis. To the contrary, "for cause shown" relates to reasons why the statutory requirements of adoption need not be met. Until the statutory requirements have been met, or cause shown as to why they need not be met, an analysis of the best interest and general

welfare of the children cannot be considered. A best interest analysis has no place in a determination of whether the statutory requisites have been met or whether "good cause shown" for not meeting the statutory requisites exists. *See In Interest of Coast,* 385 Pa.Super. 450, 561 A.2d 762 (1989) (holding that best interests balancing analysis has no place in a determination of whether the statutory requisites of termination of parental rights have been met).

¶ 18 Prior to a "best interests" of the children analysis, Appellants must meet the statutory requirements of the Adoption Act. In the case *sub judice,* the statutory requirements under the Adoption Act have not been met, and Appellants have not provided "good cause" as to why they are not required to meet the statutory requirements. As such, any consideration under the principles of the best interests of the children is not permissible.

¶ 19 Appellants next contend that the trial court erred in failing to recognize that a joint petition for adoption establishes joint parental rights. That is, Appellants contend that they used a proper procedure to permit the non-spousal parent to adopt the children. We conclude that, assuming, *arguendo,* Appellants followed the proper procedure, Appellants seek to adopt in a manner not permitted by the legislature. Again, it is for the legislature to promulgate legislation regarding adoption. As such, Appellants' argument is meritless.

¶ 20 Finally, Appellants contend that we should find that the Adoption Act permits Appellant B.A.F. to adopt the children since other states have permitted such adoptions.[8] Other states permitting such adoptions do so upon interpretation of each respective state's particular adoption

---

7. Appellants argue that retaining Appellant C.H.F.'s parental rights will enhance the family security because C.H.F. will continue to be a part of the family.

8. We note that while some states have permitted a homosexual partner to adopt without

terminating the other partner's parental rights, other states have declined to do so. *See In re Adoption of Jane Doe,* 130 Ohio App.3d 288, 719 N.E.2d 1071 (1998); *In the Matter of the Adoption of T.K.J.,* 931 P.2d 488 (Colo.Ct.App.1997).

act and are not binding upon this Court. In any event, the Pennsylvania Adoption Act is at issue here, and the Pennsylvania legislature has not provided for the type of adoption at issue.[9] As such, Appellants' final argument is meritless.

¶ 21 For all of the foregoing reasons, we affirm.

¶ 22 Affirmed.

¶ 23 Judge FORD-ELLIOTT files a concurring statement.

¶ 24 Judge JOHNSON files a dissenting opinion, in which Judge KELLY and Judge TODD join.

¶ 25 Judge TODD files a dissenting opinion, in which Judge KELLY and Judge JOHNSON join.

FORD ELLIOTT, J., concurring:

¶ 1 I concur in the result reached by the majority because I believe we are bound by our supreme court's decision *In re Adoption of E.M.A.*, 487 Pa. 152, 409 A.2d 10 (1979). In *E.M.A.*, the court was unequivocal about the efficacy of qualified consents in adoption cases. The present state of the law is that the qualified consent of the natural parent is only effective in favor of a spouse.

By its express terms, section 503 [2903] is clearly limited to adoption by the spouse of a natural parent. This statutory provision is available only in private or family adoptions, upon the marriage or remarriage of the natural father or mother. *Only in such intrafamily adoptions may a natural parent execute a valid consent retaining parental rights. And only in such a husband-wife relationship is the qualified consent legally sufficient for the spouse seeking to become an adopting parent.*

*Id.* at 154–55, 409 A.2d at 11 (emphasis added) (footnote omitted).

¶ 2 The dissent advocates that 2903 is inapplicable to the instant case because appellants are not proceeding under this section. Were we writing on a clean slate, I might agree that 2901 could allow some flexibility in the adherence to statutory requirements.[10] However, we are not free to ignore our supreme court's statutory interpretation of an issue on an identical set of facts simply because the parties choose to avoid it, the sexual orientation of the proposed adopting party being irrelevant to the application of *E.M.A.*

¶ 3 The supreme court has already decided that a parent's qualified consent to the adoption of his or her child by another who is not a spouse is ineffective under the Act. The *E.M.A.* court was also emphatic that the Adoption Act was to be strictly complied with, and that exceptions to the Act may not be judicially created where the legislature did not see fit to create them. *E.M.A., supra* at 154, 409 A.2d at 11. I would therefore find that the issue

---

9. We note that, in her dissenting opinion, Judge Todd emphasizes that under a "best interest of the child" approach, the adoption at issue should be permitted. However, as discussed *supra*, until the statutory requirements have been met, a "best interest" analysis is improper, and to suggest otherwise goes against the entire statutory scheme enacted by the legislature. Judge Todd focuses on policy reasons, rather than on a legal analysis with citation to relevant authority, to reach the conclusion that the adoption at issue should be permitted. Again, such public policy decisions are more properly in the province of the legislature where there are public committee meetings and many other opportunities for open public discussion and public input.

10. I would, however, proceed with some trepidation. While the Legislature may not have intended the very narrow interpretation of qualified consent enunciated by *E.M.A.*, it is probably safe to say that in drafting the Adoption Act, it also never anticipated the type of adoption proposed in either *E.M.A.* or the instant case. Therefore, it is somewhat incongruous that the Legislature would draft extensive statutory requirements as prerequisites to an adoption for the protection of the rights of both the natural parents and the child and then allow trial courts broad unfettered discretion to ignore those prerequisites based on the facts of any given case.

of qualified consent outside of marriage must either be re-addressed by the supreme court or returned to the Legislature for further consideration or amendment.

JOHNSON, J., dissenting:

¶ 1 We are here asked to decide whether the Adoption Act, 23 Pa.C.S. §§ 2101–2910, bars a *de facto* mother from becoming a second *de jure* parent to the two three-year-old twin boys whom she has co-parented since birth. Because I conclude that the Adoption Act permits such an adoption when the children's only legal parent advocates the adoption and has joined in the petition for adoption, I must dissent.

¶ 2 Though the Majority would hold that the Adoption Act must be strictly construed, I conclude that a liberal construction of the Adoption Act is mandatory in cases not implicating the involuntary termination of parental rights.

> It is a settled rule that in the construction of statutes an interpretation is never to be adopted that would defeat the purpose of the enactment, if any other reasonable construction can be found which its language will fairly bear.... The general purpose of [legislation prescribing procedures for adoption] is unmistakable. It is the expression of the humane and benevolent sentiments of the Legislature that passed it towards a dependent class of our population, many members of which, by reason of conditions for which they are not responsible, and which, because of infancy they have no power to overcome, are, if not entirely helpless in the struggle of life, so far prejudiced and handicapped by their environment that fair opportunity to develop into virtuous men and women is denied them. **It therefore calls for a liberal construction, to the end that it may fairly accomplish the purpose of its enactment.**

*In re McQuiston's Adoption*, 238 Pa. 304, 309–10, 86 A. 205, 206 (1913) (emphasis added).

¶ 3 I respectfully dissent from my distinguished colleagues' Majority Opinion for three reasons: (1) the Majority's strict construction of 23 Pa.C.S. § 2711 contravenes the mandate of the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, and is incongruous with the legislature's purpose in enacting section 2711; (2) the Majority erroneously applies principles of law derived from cases involving the involuntary termination of parental rights, and in so doing, it fails to recognize the discretion provided a trial court by 23 Pa.C.S. § 2901 when deciding whether to decree an adoption notwithstanding a parent's retention of her parental rights; and (3) the Majority's analysis wrongly focuses on the relationship between the petitioners at the expense of attention to the parent-child relationship and the potentially salutary effect that an adoption would have on the children's interests.

¶ 4 The Statutory Construction Act states that the "rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937." 1 Pa.C.S. § 1928(a). Because the Adoption Act that we are here construing was finally enacted in 1970, the Act must be liberally construed. *See* 1 Pa.C.S. § 1928(c) (stating that "All other provisions of a statute shall be liberally construed to effect their objects and promote justice"); The Adoption Act of 1970, July 24, P.L. 620, No. 208, § 601(a) (stating that "[t]he act of April 4, 1925 (P.L.127), entitled 'An act relating to Adoption,' is hereby repealed absolutely"); *McQuiston's Adoption*, 238 Pa. at 310, 86 A. at 206. *See also* Theresa Glennon, *Binding the Family Ties: A Child Advocacy Perspective on Second–Parent Adoptions*, 7 Temp. Pol. & Civ. Rts. L.R. 255, 260–64 (1998) (discussing how a liberal construction of the Adoption Act is mandatory in second-parent adoption cases).

¶ 5 The foundation for the Majority's holding is 23 Pa.C.S. § 2711. Section

2711(a)(3) requires that parents of an adoptee who is younger than the age of eighteen give their consent to an adoption. 23 Pa.C.S. § 2711(a)(3). Section 2711(d) requires the consent to contain a statement by which the parents permanently relinquish all rights to the child. 23 Pa. C.S. § 2711(d). The Majority holds that compliance with section 2711 is an absolute prerequisite to a successful petition for adoption. Majority Opinion at 741–42. I disagree.

¶ 6 The voluntary relinquishment of parental rights prescribed in section 2711 serves several purposes. Chief among these purposes is to safeguard a parent's fundamental liberty interest in the child that is to be adopted. *Cf. Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Because "'a decree of adoption terminates forever all relations between the child and its natural parents [and] severs [the child] entirely from [his or her] own family tree[,]'" *McNamara v. Thomas*, 741 A.2d 778, 782 (Pa.Super.1999) (quoting *In re Schwab's Adoption*, 355 Pa. 534, 50 A.2d 504, 505 (1947)), a parent's consent to relinquish his or her parental rights to the adoptee must be intelligent, voluntary and deliberate. *See In re Voluntary Termination of Parental Rights to M.L.O.*, 490 Pa. 237, 416 A.2d 88, 90 (1980). Section 2711 also serves to ensure finality by extinguishing the right of a natural parent to challenge the petition for adoption or the resulting adoption. *See In the Matter of the Adoption of Christopher P.*, 480 Pa. 79, 389 A.2d 94, 97 (1978); *In re Shapiro*, 474 Pa. 139, 377 A.2d 153, 155 (1977).

¶ 7 In the instant case, neither of these purposes are served by the Majority's wooden application of section 2711. Clearly, requiring C.F. to relinquish her parental rights to R.B.F. and C.H.F. does not serve the purpose of safeguarding her fundamental liberty interest as the children's natural mother. Furthermore, because C.F. is a party to the petition for adoption, it would be illogical to apply a statute

designed to ensure that parties who may potentially oppose the petition have given up their rights to so protest. In this regard, the trial court's concern with ensuring finality should have been satisfied when C.F., the only person possessing legal rights to R.B.F. and C.H.F., joined the petition for adoption. Therefore, construing the statute as a mandatory requirement in this case does not effectuate the purposes of the relinquishment requirement. Moreover, such a construction is unreasonable, and therefore, it contravenes the Statutory Construction Act. *See* 1 Pa.C.S. § 1922(1); *See also Stollar v. Continental Can Co.*, 407 Pa. 264, 180 A.2d 71, 74 (1962) (stating that "to give [the provisions of a statute] an unreasonable or absurd construction violates the fundamental rules of statutory construction"). Accordingly, I would hold that on the facts of this case the trial court erred in construing the relinquishment requirement of section 2711 as mandatory. *See McQuiston's Adoption*, 238 Pa. at 309–10, 86 A. at 206.

¶ 8 The second reason for my dissent is that the Majority refuses to recognize the discretion that 23 Pa.C.S. § 2901 bestows upon a trial court in deciding whether to decree an adoption notwithstanding the fact that a parent's rights to an adoptee have not been terminated. Section 2901 states:

**Unless the court for cause shown determines otherwise,** no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated . . . and all other legal requirements have been met.

*Id.* (emphasis added).

¶ 9 I conclude, as a logical corollary to this provision, that if "the court for cause shown determines" that an adoption should be decreed, the court may do so notwithstanding the fact that a parent's rights have not been terminated. *Id.* The Majority limits the discretion provided by section 2901 by requiring a petitioner to comply with all the statutory requirements **before** a court is permitted to consider

what cause shown would merit a decree of adoption. Majority Opinion at 743. The Majority asserts that the parental relinquishment provision of section 2711 is one such statutory requirement. *Id.*

¶ 10 However, the Majority's construction renders one of the provisions of section 2901 superfluous. If the court is bound by the requirements of section 2711 and is not entitled to exercise discretion to decree an adoption absent termination of existing parental rights, the initial clause of section 2901 would be devoid of legal substance or effect. Section 2901 states that "no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated." 23 Pa.C.S. § 2901. However, this clause is preceded with the proviso: "Unless the court for cause shown determines otherwise." *Id.* To conclude, as the Majority, that a trial court may not consider reasons why an adoption should be decreed, such as a child's best interest, absent compliance with the termination provisions of section 2711, elevates the "termination" clause of section 2711 and reads the "cause shown" clause of section 2901 out of existence. Such an analysis, at best, renders the "cause shown" clause of section 2901 superfluous. "The legislature cannot, however, be deemed to intend that language used in a statute shall be superfluous and without import." *Commonwealth v. Mack Bros. Motor Car Co.*, 359 Pa. 636, 59 A.2d 923, 924 (1948); *Commonwealth v. Baumer*, 212 Pa.Super. 372, 243 A.2d 472, 474 (1968). *See also* 1 Pa.C.S. § 1922(2) (stating that the General Assembly intends an entire statute to be effective and certain).

¶ 11 More to the point, the ultimate effect of the Majority's construction is to negate the authority and direction of the General Assembly in enacting section 2901. If the legislature had wished to erect an absolute bar to adoption without giving consideration to a child's best interest, it would never have provided the discretion so clearly established in section 2901.

Thus, we must recognize that section 2901 specifically allows a court to decree an adoption for cause shown where the parent or parents' rights have not been terminated. *See* 23 Pa.C.S. § 2901. Therefore, I conclude that the trial court committed an error of law when it failed to recognize the discretion provided it by section 2901. *See* Trial Court Opinion at 5 (stating that "the sole exception to the provisions of § 2711 requiring an unqualified consent by the parent is contained in § 2903").

¶ 12 The Majority premises its conclusion that a court may not exercise the discretion provided by section 2901 until parental rights have been terminated on a line of cases decided in the context of *involuntary termination* of parental rights. The substantive focus of those cases was dramatically different from our focus here. The Majority cites *In Interest of Coast*, 385 Pa.Super. 450, 561 A.2d 762 (1989), in support of its assertion that the judicial discretion provided by section 2901 may not be exercised until the natural parents' rights to their children have been terminated. Consequently, the Majority concludes that a court does not reach the consideration of whether an adoption would be in a child's best interest where a parent has retained rights to that child. Majority Opinion at 743. For the following reasons, I conclude that the Majority's reliance on *Coast*, and the proposition of law it enunciates, is misplaced.

¶ 13 In *Coast*, the appellant parents appealed a trial court decree that *involuntarily terminated* their parental rights to their two children. This Court, in reliance upon *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and a line of Pennsylvania Supreme Court cases, *see In re Schwab's Adoption*, 355 Pa. 534, 50 A.2d 504 (1947) and *In re Adoption of McAhren*, 460 Pa. 63, 331 A.2d 419 (1975), stated that "in the absence of sufficient evidence to satisfy the statutory requirements for involuntary termination, the question of the best interests of the child never arises." *Coast*, 561 A.2d at 768

(quoting *McAhren*, 331 A.2d at 442). The focus of each of these cases was on the *involuntary termination* of parental rights. In such proceedings, the government seeks to deprive parents of their parental rights because they are no longer fit to care for a child or because they have abandoned their child. 23 Pa.C.S. §§ 2511–2513, 2521. Thus, in determining whether it should *involuntarily terminate* the parents' rights, a court must focus on the parents' fundamental liberty interest in the child. *See Santosky*, 455 U.S. at 753, 102 S.Ct. 1388. In an adoption case where petitioners seek to add a parent, there is no assertion by the government that the natural parent is unfit to care for the child and, therefore, there is no third party seeking to involuntarily terminate the natural parent's rights. Consequently, there is no competing fundamental liberty interest for the court to consider. Thus, unless a parent's rights to his or her child are to be terminated involuntarily, the purpose underlying the decisions in *Santosky*, *Coast*, and *Schwabb's Adoption* is not present.

¶ 14 Concisely stated, unless the proceeding in question involves depriving a parent of his or her natural right to a child, section 2901 gives the court the discretion to dispense with the termination requirement of section 2711. Where, as here, the petitioning parties seek to adopt a child, and no *involuntary termination* is sought, the focus of the court's inquiry should be upon the children's best interests. *See* 23 Pa.C.S. § 2724 (stating that the court "shall decide the desirability of an adoption on the basis of the physical, mental, and emotional needs and welfare of the child"); *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10, 13 (1992) (stating that the Adoption Act "clearly focuses on the needs of the child, reflecting the policies expressed at common law"). Thus, because the requirements of section 2711 are intended to protect natural parents' fundamental liberty interests in their children and are not mandatory where the parties seek to add a parent by adoption, I con-

clude that a court, acting though the discretion provided it by section 2901, may grant an adoption where a parent's rights have not been terminated. *See* 23 Pa.C.S. § 2901. *Cf. In re Adoption of Stickley*, 432 Pa.Super. 354, 638 A.2d 976, 980 (1994) (stating that "we will not terminate parental rights upon a petition to confirm consent to adoption where the statutory requirements have not been satisfied").

¶ 15 The third and final reason for my dissent is that the Majority's analysis wrongly focuses on the relationship between the petitioners at the expense of attention to the parent-child relationship and the potentially salutary effect that an adoption would have on the children's interests.

> Although courts have gone to great lengths to provide every child with precisely one mother and one father, the realities of family formation and parenting are considerably more complex. Lesbian-mother families are but one alternative to the presumed form. In resolving disputes about the custody of children, the court system should recognize the reality of children's lives, however unusual or complex. Courts should design rules to serve children's best interests. By failing to do so, they perpetuate the fiction of family homogeneity at the expense of the children whose reality does not fit this form.

*Blew v. Verta*, 420 Pa.Super. 528, 617 A.2d 31, 36 (1992) (quoting Nancy D. Polikoff, *This Child Does Have Two Mothers: Redefining Parenthood to Meet the Needs of Children in Lesbian–Mother and Other Nontraditional Families*, 78 Geo. L.J. 461, 469 (1990)).

¶ 16 In cases such as the one before us, the reality is that a lesbian couple is parenting the children. It is doubtful that our decision here will have any affect on this reality. However, our decision here does affect the children's interests. Regrettably, the Majority turns a blind eye to the children's interests by choosing to ignore

the reality of non-traditional families. Indeed, the Majority goes so far as denigrate the family before us, stating: "Appellants' attempts at establishing a *de facto* family, which would qualify for adoption under Section 2903, is unavailing." Majority Opinion at 742. The Majority makes this statement despite the Appellants' acknowledgment that Section 2903 is not applicable to the facts of this case. Brief for Appellants at 38 (stating that "Section 2903 is not at issue in this case"). Section 2903 provides that: "[w]henever a parent consents to the adoption of his child by his spouse, the parent-child relationship between him and his child shall remain." 23 Pa.C.S. § 2903. The term "spouse" refers only to one's husband or wife and, therefore, only legally married couples can avail themselves of section 2903. *See In re Adoption of E.M.A.*, 487 Pa. 152, 409 A.2d 10, 11 n. 4 (1979).

¶ 17 I am confounded by the Majority's assertion that the Appellants have sought to avail themselves of section 2903. Moreover, I discern no import in the Majority's discussion of legally recognized marriages within our Commonwealth. Seemingly, the Majority has concluded that because same-sex marriages are not recognized in Pennsylvania, neither should second-parent adoptions. The Majority's focus is misguided and its analysis ill-founded.

¶ 18 My conclusion here is buttressed by the fact that the Adoption Act does not prohibit a joint adoption by an unmarried homosexual or heterosexual couple when the adoptee is not related to either petitioner. *See* 23 Pa.C.S. § 2312. *See also* 23 Pa.C.S. § 2701 (Contents of petition for adoption). In such a situation, the consent requirement of section 2711 is not implicated, nor is the "spousal exception" of section 2903. I have found no provision of the Adoption Act that mandates or even permits differential treatment to homosexual joint petitioners versus heterosexual joint petitioners. Nor does the Adoption Act mandate or permit differential treatment

for married joint petitioners versus unmarried joint petitioners.

¶ 19 The Majority states that it does not "base its decision on Appellants' sexual orientation." Majority Opinion at 741. Nevertheless, it goes on to state that it "is for the legislature to decide whether to expand the Adoption Act to cover same-sex partners." *Id.* at 742. However, the Majority's conclusion that the Adoption Act somehow proscribes same-sex partners from adopting is wholly without statutory authority. The only legislatively enacted provision that the Majority has to rely upon is section 2711 (consents necessary for an adoption). But this provision does not purport to establish a proscription on who may adopt and it does not even mention sexual orientation or marriage. Thus, the Majority has superimposed upon the Adoption Act a judicial gloss that favors adoptions by heterosexual married couples over homosexual unmarried couples.

¶ 20 The Majority also relies on *In re Adoption of E.M.A.*, 487 Pa. 152, 409 A.2d 10 (1979), and *In re Adoption of K.M.W.*, 718 A.2d 332 (Pa.Super.1998), for the proposition that we cannot create a judicial exception to the Adoption Act. However, in order to have an exception, there must be a rule. I reiterate that the Adoption Act contains no rule proscribing same-sex partners from adopting. Thus, the conclusion I reach does not usurp the powers of the legislature. To the contrary, it serves our legislature's purpose in enacting the Adoption Act because it permits courts to decree an adoption when it would be in a child's best interest to have two parents rather than one. *See* 23 Pa.C.S. § 2724; *McQuiston's Adoption*, 238 Pa. at 309–10, 86 A. at 206; *Hess*, 608 A.2d at 14.

¶ 21 *E.M.A.* is also distinguishable from the instant case because the sole issue raised by the appellants in *E.M.A.* was whether an unmarried couple could avail themselves of section 2903's spousal exception. *See* 409 A.2d at 11. As stated above, the Appellants in the instant case have not

sought to avail themselves of section 2903. Rather, they have sought to avail themselves of section 2901. The language of section 2901 that grants a trial court the discretion to decree an adoption even when a parent's rights to an adoptee have not been terminated was enacted in 1982, three years after the *E.M.A.* decision. *See* Act of 1982, June 23, P.L. 617, No. 174, § 8. Thus, the Appellants argue, *E.M.A.* is not controlling of our decision here. I agree.

¶ 22 In discussing the spousal exception of section 2903, the Majority has failed to acknowledge the genesis of this statute. The official comment to this section states that the section "is declaratory of existing law." 23 Pa.C.S. § 2903 (Official Comment 1970). Therefore, section 2903 was purely a codification of the common procedure employed by trial judges in decreeing step-parent adoptions. We have before us eleven attorney amici who assert that they have represented clients in ninety-six successful second-parent adoptions spanning twelve counties in our Commonwealth. *See* Brief for *Amici Curiae* Women's Law Project, Appendix. Undoubtedly, these courts decreed the adoptions based on their findings that adoption would be in the children's best interests. *See In re Adoption of E.O.G.*, 28 Pa.D. & C.4th 262 (York 1993). There cannot be a more eminently reasonable procedure to follow. Our legislature, in enacting section 2903, has already recognized that the trial judges who are on the front lines of these adoption proceedings are best situated to determine an appropriate procedure to follow in cases where there is a void of authority in the Adoption Act. As stated above, the Adoption Act does not prohibit same-sex couples from adopting, nor does it require that joint petitioners be married. Because there is no proscription against the adoption sought in the instant case, the trial court had the discretion under section 2901 to decree an adoption.

¶ 23 For all the foregoing reasons, I conclude that the trial court abused its discretion in not granting the Appellants the evidentiary hearing requested in their Petition for Adoption. The Adoption Act "directs the court, upon a hearing on a Petition for Adoption, to take testimony and, if necessary, to order an investigation to decide whether the granting of the Petition suits 'the physical, mental, and emotional needs and welfare of the child.'" *Hess*, 530 Pa. at 226, 608 A.2d at 14 (quoting 23 Pa.C.S. § 2724(b)). In the instant case, the Appellants requested a hearing on their Petition for Adoption. The trial court denied a hearing and dismissed the Appellants' Petition for Adoption. Trial Court Decree, 10/22/98. In so doing the court failed to consider the best interests of the twin boys and denied the Appellants an opportunity to show the court cause as to why it should decree an adoption notwithstanding C.H.F.'s retention of her parental rights. Although there is no record before us to evaluate what "cause shown" would merit a decree of adoption where one parent has retained parental rights, it is axiomatic that the court's inquiry must focus on the child's best interest. *See* 23 Pa.C.S. § 2724; *Hess*, 608 A.2d at 14. This paramount issue must be analyzed on a case-by-case basis.

¶ 24 Our decision here must be guided by our duty to promote sound public policy. The reality of our society today is such that unwanted infants are left abandoned in dumpsters and some married heterosexual parents are unfit to raise children whom they often grossly abuse or neglect. In this current state of our society, we should interpret the laws of our Commonwealth in such a way that adheres to the mandates of our legislature and promotes the placement of children in stable families who can provide nurturing and supportive homes. Our legislature has yet to find the occasion to speak on the rights of homosexuals to adopt. When and if it does, our duty will be to implement the law accordingly. Until then, our legislature, in enacting section 2901, has given our courts the discretion to decree an adoption in

cases such as the one before us. Indeed, the trial judges of our Commonwealth have already decreed over ninety-six second-parent adoptions. *See* Brief for *Amici Curiae* Women's Law Project, Appendix. How a court should exercise its discretion in any particular case will depend on what facts are presented to it and what the court concludes will ultimately promote the child's best interests.

¶ 25 Accordingly, I respectfully dissent and would reverse the decree and remand for an evidentiary hearing consistent with this dissent.

¶ 26 Judge KELLY and Judge TODD join this dissenting opinion.

TODD, J., dissenting:

¶ 1 I join in the Dissenting Opinion of my distinguished colleague, the Honorable Justin M. Johnson. I write separately to emphasize the impact of the Majority's decision on the children at issue in this case.

¶ 2 I am convinced that the trial court has discretion to decree the adoption in cases such as this under the Adoption Act (23 Pa.C.S. § 2901).[11] I am equally convinced that, contrary to the Majority's characterization of "Appellants' attempt at establishing a *de facto* family" (Majority Opinion, at 742), Appellants already have established a real family, albeit one that does not meet the traditional definition accorded by society. Appellants have been in a committed relationship for over seventeen years. In an effort to do what is best for their children B.A.F. and C.H.F., the twin boys they have co-parented since their birth in 1997, they have sought to formalize the boys' relationship with the biological mother's partner through their adoption action, and to provide for the boys' future security by vesting them with the legal rights and benefits of adoption. These benefits, which the

Majority by its decision herein has decreed shall not be obtainable, include the legal protection of the children's existing familial bonds, their rights to financial support from two parents instead of just one, rights to inheritance from each parent and rights to obtain other available dependent benefits, such as health care insurance and Social Security benefits, from either parent. No legal mechanism other than adoption can offer such protection to these children, and yet the Majority finds that it cannot reach a best interest of the children analysis. With this conclusion, I respectfully disagree.

¶ 3 To the contrary, I agree with Appellants' assertion that the focus of an adoption is not the parents' gender or relationship, but the children's best interest. Despite the legislative mandate that "any individual" may adopt or be adopted, 23 Pa.C.S. §§ 2311–2312, the Majority's analysis precludes an entire class of children and parents from the Act's reach.

¶ 4 In my view, the learned trial court abused its discretion when it dismissed Appellants' Petition for Adoption without holding a hearing in order to determine whether good cause has been shown to allow the adoption to proceed. If the proposed adoption is demonstrated to be in the best interest of the children, I do not believe this Court should prevent it from taking place.

¶ 5 As counsel for Appellants so aptly argued before this Court, unlike the typical domestic relations case involving acrimonious disputes in fractured families, this appeal presents an unopposed adoption in a happy and intact family. Here, both parents have raised the children since their births, have financially supported them, loved them, taken them to church, and educated them. Under the circumstances presented, I must respectfully dissent from the Majority's holding that Ap-

---

**11.** I do not restate herein the legal analysis and citations to authority which support this conclusion as they have been exhaustively ad-

dressed in Judge Johnson's Dissenting Opinion, which I have joined.

pellants may not, through the vehicle of adoption, both legally parent them.

¶ 6 The Courts of Common Pleas of at least fourteen counties in Pennsylvania have permitted such second-parent adoptions in over one hundred cases. Our Court's decision today, in effect, will deny hundreds of other children throughout our Commonwealth the legal benefits of parenthood.

¶ 7 Appellate courts in other states that have been called upon to interpret equally broadly-written adoption statutes have recognized the benefit to the child in permitting second-parent adoptions. *See, e.g., In re Jacob,* 86 N.Y.2d 651, 636 N.Y.S.2d 716, 660 N.E.2d 397 (1995); *In re M.M.D. & B.H.M.,* 662 A.2d 837 (D.C.App.1995); *In re Adoption of Two Children by H.N.R.,* 285 N.J.Super. 1, 666 A.2d 535 (1995); *In re K.M. and D.M.,* 274 Ill.App.3d 189, 210 Ill.Dec. 693, 653 N.E.2d 888 (1995); *Adoptions of B.L.V.B. and E.L.V.B.,* 160 Vt. 368, 628 A.2d 1271 (1993); *Adoption of Tammy,* 416 Mass. 205, 619 N.E.2d 315 (1993).

¶ 8 In Massachusetts, the Supreme Judicial Court summarized the benefits of such adoptions in *Adoption of Tammy, supra,* as follows:

Adoption will not result in any tangible change in Tammy's daily life; it will, however, serve to provide her with a significant legal relationship which may be important in her future. At the most practical level, adoption will entitle Tammy to inherit from [the second parent] Helen's family ... and from Helen ..., to receive support from Helen, who will be legally obligated to provide such support, to be eligible for coverage under Helen's health insurance policies, and to be eligible for social security benefits in the event of Helen's disability or death. Of equal, if not greater significance, adoption will enable Tammy to preserve her unique filial ties to Helen in the event that Helen and Susan [the biological mother] separate, or Susan predeceases Helen. As the case law and commentary on the subject illustrate, when the functional parents of children born in circumstances similar to Tammy separate or one dies, the children often remain in legal limbo for years while their future is disputed in the courts.... Adoption serves to establish legal rights and responsibilities so that, in the event that problems arise in the future, issues of custody and visitation may be promptly resolved by reference to the best interests of the children within the recognized framework of the law.

*Adoption of Tammy,* 619 N.E.2d at 320–21 (citations omitted).

¶ 9 In this case, the Majority's interpretation of the Adoption Act will not further the interests of these children by preventing this adoption. This decision will not change the everyday reality of the children's lives, their living arrangements or the parties' parenting practices. It will, however, deny the children the benefits of parental recognition, stability and future security.

¶ 10 I conclude that permitting second-parent adoption may significantly advance the welfare of these children, and of many others like them, and, that such an adoption is not inconsistent with Pennsylvania law. For these reasons, I respectfully dissent from the decision of my esteemed colleagues.

¶ 11 Judge KELLY and Judge JOHNSON join this dissenting opinion.